NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241512-U

NO. 4-24-1512

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* G.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
|     Petitioner-Appellee, | ) | No. 23JA111 |
|     v. | ) | |
| Destiny S., | ) | Honorable |
|     Respondent-Appellant). | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Harris and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court's findings respondent was an unfit parent and it was in the minor's best interest to terminate respondent's parental rights were not against the manifest weight of the evidence.

¶ 2    Respondent mother, Destiny S., appeals the trial court's judgment terminating her parental rights to her son, G.S. (born May 2023). On appeal, respondent argues the court's findings she was an unfit parent and it was in the minor's best interest to terminate her parental rights are against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3    I. BACKGROUND

¶ 4    In August 2024, the State filed a motion to terminate respondent's parental rights to the minor. In the motion, the State alleged respondent was an unfit parent in that she (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) failed to make reasonable efforts to correct the conditions

which were the basis for the removal of the minor within a nine-month period following the minor's August 30, 2023, adjudication of neglected, namely August 30, 2023, to May 30, 2024 (*id.* § 1(D)(m)(i)); and (3) failed to make reasonable progress toward the return of the minor to her within a nine-month period following the minor's adjudication of neglected, namely, August 30, 2023, to May 30, 2024 (*id.* § 1(D)(m)(ii)). The State further alleged it was in the minor's best interest to terminate respondent's parental rights and appoint the Illinois Department of Children and Family Services (DCFS) as guardian, with the power to consent to adoption.

¶ 5    In November 2024, the trial court held a hearing on the State's motion to terminate respondent's parental rights. Respondent, despite being provided notice, did not appear for the hearing.

¶ 6    With respect to the fitness portion of the hearing, the trial court took judicial notice of orders entered in the minor's case, as well as orders entered in a case involving the minor's older sibling. The court also heard testimony from a caseworker who had been assigned to the minor's case since October 2023. The following information is gleaned from the evidence before the court.

¶ 7    Following his May 2023 birth, the minor was taken into DCFS care due to concerns with respondent's substance abuse and her failure to cooperate with recommended intact services, including toxicology screens. The minor was later adjudicated neglected and made a ward of the court pursuant to section 2-3(1)(a)-(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(a-b) (West 2022)) based upon respondent's failure to cooperate with the recommended intact services, including toxicology screens and domestic-violence services. The recommendation for domestic-violence services stemmed from physical violence occurring in front of the minor's sibling.

¶ 8    As part of this case, it was recommended respondent engage in substance-abuse, domestic-violence, counseling, and parenting services. It was also recommended she attend visits with the minor, cooperate with DCFS, and obtain and maintain suitable housing and income.

¶ 9    In October 2023, the caseworker who had recently been assigned to the minor's case met with respondent and discussed the recommended services with her, including the need for her to provide updated contact information whenever it changed. The caseworker described respondent's demeanor as "carefree" and "angry." He also indicated she "[f]elt as though she didn't need to do her services."

¶ 10    Sometime prior to October 2023, respondent completed a substance-abuse assessment. While the assessment did not result in recommended treatment, it was still recommended respondent comply with toxicology screens. Respondent had been referred to 19 toxicology screens since October 2023. She complied with only two of the toxicology screens, one of which produced a positive result for amphetamines in May 2024. As a result of the positive screen, it was recommended respondent complete another substance-abuse assessment, which respondent had not completed.

¶ 11    Respondent was unsuccessfully discharged from domestic-violence services in January 2024. She had attended approximately 7 of 26 sessions. In May 2024, the minor's caseworker referred respondent for a clinical assessment to determine whether she still needed to be referred for domestic-violence services. Respondent completed the assessment, which resulted in a recommendation for services. In September 2024, respondent reported she had begun classes but then stopped attending. She had not signed a release for the caseworker to receive information about the classes.

¶ 12    Respondent was unsuccessfully discharged from counseling in July 2023. In

September 2024, respondent reported she had begun counseling but then stopped attending. The caseworker testified there were mental-health concerns due to respondent's "depressive episodes."

¶ 13  Respondent was unsuccessfully discharged from parenting services prior to October 2023. The minor's caseworker referred her to parenting services in January 2024. She was unsuccessfully discharged from those services in April 2024. The caseworker referred her to parenting services in May 2024. Respondent completed the services in September 2024.

¶ 14  Respondent was offered approximately 40 visits with the minor since July 2023. She failed to appear at about half of the visits. There were no concerns with her parenting when she attended the visits. Respondent had not attended a visit with the minor since July 2024.

¶ 15  Between July and September 2024, the minor's caseworker had no communication with respondent, despite him calling and texting her and making unannounced visits at her residence. One week after she completed her parenting services in September 2024, respondent contacted the caseworker. Respondent reported her phone was broken. Since September 2024, respondent's communication with the caseworker had been sporadic.

¶ 16  Respondent resided with her mother, which was considered stable housing. The minor's caseworker, however, had concerns about the stability of the relationship between respondent and her mother. During visits to the home, he observed respondent and her mother yelling at each other.

¶ 17  Respondent reported having several different jobs. She did not, however, provide the minor's caseworker with the requested pay stubs for verification.

¶ 18  Based on this information, the trial court found respondent was an unfit parent for the reasons alleged in the State's motion to terminate parental rights.

¶ 19  With respect to the best-interest portion of the hearing, the trial court heard

- 4 -

testimony from the caseworker who had been assigned to the minor's case since October 2023. The following information is gleaned from testimony before the court.

¶ 20    The minor had been placed with his foster family since shortly after his birth. He was "thriving" in his foster home and was bonded to his foster parents and four foster siblings. The foster parents assured all the minor's needs were met. The minor had his own bedroom in the foster home. The foster parents planned to teach the minor, who is mixed-race, about his background. The minor's foster siblings were also of other races. The foster parents were willing and able to provide the minor with permanency through adoption. They indicated they were open to continuing a relationship between the minor and respondent if respondent's parental rights were terminated. Likewise, they were also open to visitation between the minor and his biological sibling.

¶ 21    The minor's caseworker did not observe a bond between the minor and respondent. During visits, the minor seemed more interested in toys than respondent. While respondent cared for the minor during visits, the caseworker never observed her hold the minor or express love to him. When the caseworker discussed with respondent the possibility of a continued relationship with the minor if her rights were terminated, she indicated she was not open to the idea.

¶ 22    Based on this information, the trial court, after considering the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2022)), found it would be in the minor's best interest to terminate respondent's parental rights. The court entered a written order terminating respondent's parental rights.

¶ 23    This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25 On appeal, respondent argues the trial court's findings she was an unfit parent and it was in the minor's best interest to terminate her parental rights are against the manifest weight of the evidence. The State disagrees.

¶ 26 First, respondent argues the trial court's finding she was an unfit parent is against the manifest weight of the evidence.

¶ 27 In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 28 The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)). Section 1(D)(m)(ii) states, in part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected." *Id.*

¶ 29 "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. The benchmark for measuring a parent's progress toward reunification

> "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at

216-17.

In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007).

¶ 30 In this case, the relevant time period was August 30, 2023, to May 30, 2024. During this period, respondent failed to engage in the majority of the recommended services. Amongst other things, she repeatedly failed to comply with the recommended toxicology screens. She failed to do so despite the fact the minor came into DCFS's care because of concerns with her substance abuse. On this issue, respondent asserts she "encountered barriers in accessing services." The evidence presented during the fitness portion of the hearing, however, provides no support for her assertion. Given the information gleaned from the evidence presented, we find the trial court's unfitness finding based on respondent's failure to make reasonable progress toward the return of the minor to her is not against the manifest weight of the evidence.

¶ 31 As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the other grounds for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70.

¶ 32 Next, respondent argues the trial court's finding it was in the minor's best interest to terminate her parental rights is against the manifest weight of the evidence.

¶ 33 In a proceeding to terminate parental rights, the State must prove termination is in the child's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367 (2004). A trial court's best-interest finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 34 When considering whether termination of parental rights would be in a child's best

interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2022). The focus is on the child, and the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *D.T.*, 212 Ill. 2d at 364.

¶ 35 In this case, the evidence showed the minor had been with his foster family for almost a year and a half. The minor was bonded to his foster parents and siblings, and his needs were being met. The foster parents planned to teach the minor, who is mixed-race, about his background, and they also indicated they were open to visitation between the minor and his biological sibling. The minor's foster siblings were also of other races. The foster parents were willing to provide the minor with permanency through adoption. Conversely, there was no known bond between the minor and respondent. Additionally, respondent, who had not completed the recommended services, could not provide the minor with permanency. Given the information gleaned from the evidence presented, we find the trial court's finding it was in the minor's best interest to terminate respondent's parental rights is not against the manifest weight of the evidence.

¶ 36 III. CONCLUSION

¶ 37 For the reasons stated, we affirm the trial court's judgment.

¶ 38 Affirmed.